**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT COURT OF LOUISIANA**

| | |
|---|---|
| **TRISTEN LAMONS** | **CIVIL ACTION** |
| **VERSUS** | |
| | **NO. 25-480-SDD-EWD** |
| **MASTER SGT. OCTAVIA THOMPSON, ET AL** | |
| | **JUDGE SHELLY D. DICK** |
| | **MAGISTRATE JUDGE ERIN WILDER-DOOMES** |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**NOW INTO COURT**, through undersigned counsel, **WILLIE STEPHENS JR.**, comes Plaintiff, **TRISTEN LAMONS**, who respectfully submits this Memorandum in Opposition to Defendant's Motion for Summary Judgment as to why this motion should be denied and states as follows:

**FACTUAL BACKGROUND**

1. Plaintiff filed ARP DCI-2024-424 ("ARP 424") regarding the March 24, 2024 incident involving Defendant Octavia Thompson, which was received and accepted on April 4, 2024. However, no First Step response was issued until June 18, 2025, approximately fourteen months later. A Second Step response was not issued until August 26, 2025, approximately 50 days from the date it was received. Similarly, ARP DCI-2024-468 ("ARP 468") was received on April 17, 2024, but remained pending for over a year before being accepted on June 18, 2025. The First Step response was not issued until July 29, 2025, approximately 41 days after it was accepted.

1

Likewise, APR DCI-2024-926 ("ARP 926") was received and accepted on August 30, 2024, but no First Step response was issued until September 9, 2025, approximately 375 days after it was accepted. Plaintiff filed suit on March 24, 2025. At that time, prison officials had not issued a single response to any of Plaintiff's ARPs despite the passage of at least twelve months in each one.

**LEGAL STANDARD**

2. According to Rule 56 of the Federal Rule of Civil Procedure, summary judgment is appropriate only where there is no genuine dispute as to any material fact and the movant is entitled to judgment as of a matter of law. The Supreme Court held that failure to exhaust administrative remedies is an affirmative defense that need not be specially pleaded by prisoners in their complaints. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Consequently, Defendants bear the burden of proving non-exhaustion. Because exhaustion is an affirmative defense, all reasonable inferences must be drawn in favor of Plaintiff as the non-moving party.

**THE PLRA REQUIRES EXHAUSTION ONLY OF AVAILABLE REMEDIES**

3. The Prison Litigation Reform Act provides "No action shall be brought with respect to prison conditions under section 1983…until such administrative remedies as are available are exhausted." 42 U.S.C. Section 1997e(a). In *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court held that inmates must exhaust only those remedies that are actually "available". The Court identified several circumstances in which an administrative remedy is unavailable, including where the process operates as a "dead end" because prison officials are unable or consistently unwilling to provide relief. The Supreme Court explained "an administrative procedure is unavailable when…it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643. Thus, the central question before

this Court is not merely whether Plaintiff completed every step of the ARP process before filing suit, but whether the ARP process remained available after prison officials ignored mandatory deadlines for more than a year.

**DEFENDANTS' VIOLATIONS OF MANDATORY ARP DEADLINES**

4. Louisiana's Administrative Remedy Procedure is governed by Louisiana Administrative Code title 22, Pt. I, Section 325. The regulation requires a First Step response within forty (40) days; a Second Step response within forty-five (45) days; and completion of the entire process within ninety (90) days absent a properly granted extension. The regulation further provides that "no more than 90 days from the initiation to completion of the process shall elapse, unless an extension has been granted". Defendants have offered no evidence that any authorized extensions were issued. Instead, Defendants' exhibits demonstrate ARP 424 remained unresolved for approximately seventeen months, ARP 468 remained unresolved for approximately seventeen months, and ARP 926 remained unresolved for over one year. These delays exceed Louisiana's mandatory ninety-day cap by hundreds of days. The ARP system described in the regulations is not the system Plaintiff actually encountered. The record demonstrates a grievance process that repeatedly failed to comply with its own mandatory deadlines.

**DEFENDANTS' FAILURE TO COMPLY WITH MANDATORY CAP RENDERED ARP PROCESS UNAVAILABLE**

5. Louisiana's Administrative Remedy Procedure does not merely establish aspirational deadlines, but imposes mandatory limits on the amount of time prison officials take to process grievances. The Louisiana Administrative Code Title 22, Pt. I, Section 325(J)(1)(c) states that "no more than 90 days from the initiation to completion of the process shall elapse, unless an extension has been granted…absent such an extension, expiration of response time limits shall entitle the

3

offender to move on to the next step in the process." Defendants have produced no evidence that any valid extension was ever requested, approved, or communicated to Plaintiff, nor have Defendants produced any evidence demonstrating compliance with the procedural safeguards required for extensions under the regulation. Instead, Defendants' own exhibits establish that Plaintiff's grievances remained pending for approximately fourteen to seventeen months before meaningful responses were issued. The delays in this case exceed Louisiana's mandatory ninety-day cap by hundreds of days. The ARP therefore ceased operating in the manner contemplated by Louisiana law and constituted far more than mere administrative delay. The PLRA requires exhaustion only of those remedies that are "available". A remedy cannot be reasonably considered available when prison officials fail to follow the very procedures that define the existence and operation of that remedy. If prison officials may disregard mandatory grievance deadlines indefinitely while still insisting that inmates remain bound to the exhaustion requirement, then the statutory limitation of "available" remedies becomes meaningless. At minimum, Defendants' evidence creates a genuine issue of material fact regarding whether the ARP remained available after prison officials ignored mandatory deadlines for more than a year.

### DELAY RENDERS THE ARP PROCESS A DEAD END UNDER *ROSS*

6. Defendants ask this Court to treat the ARP process as fully available despite undisputed evidence that prison officials ignored mandatory deadlines by more than a year. *Ross* states that a grievance system is unavailable when it becomes a "dead end". A reasonable factfinder could conclude that a process requiring responses within forty days has become precisely the type of dead-end process contemplated by *Ross* when no response is produced for fourteen months. Defendants cannot simultaneously argue that the Plaintiff was required to continue relying upon the ARP process, and that prison officials were permitted to ignore mandatory deadlines by more

4

than a year. At minimum, these facts create a genuine dispute concerning whether any administrative remedy remained available.

## INMATES SHOULD NOT BE PENALIZED FOR DPSC'S FAILURE TO FOLLOW ITS OWN DEADLINES

7. Louisiana courts have repeatedly recognized that inmates should not suffer adverse consequences because the Department of Public Safety & Corrections ("DPSC") failed to comply with mandatory ARP deadlines. In *Harper v. Louisiana Dept. of Public Safety & Corrections*, 166 So.3d 1078 (La. App. 1 Cir. 2015), the First Circuit held that an inmate should not be penalized for failure to exhaust where DPSC itself failed to comply with ARP deadlines. The court held that administrative remedies were pursued to the fullest extent possible under the circumstances and emphasized that DPSC's failure to follow its own rules should not be used against the inmate. Likewise, in *Taylor v. Louisiana Department of Public Safety & Corrections*, 316 So.3d 32 (La. App. 1 Cir. 2020), the court found that a 141-day delay was unreasonable and expressly attributed no fault to the inmate. The delays present here are substantially worse as they exceed 420 days. If a 141-day delay was deemed unreasonable, then delays of fourteen to seventeen months are plainly sufficient to create a genuine issue of fact concerning the availability of administrative remedies.

## PLAINTIFF FACED A SUBSTANTIAL RISK OF PRESCRIPTION

8. Defendants' position places Plaintiff in an impossible situation as the incidents at issue began on March 2024, and Plaintiff promptly initiated the ARP process, but prison officials failed to issue any substantive response for approximately fourteen months. Had Plaintiff continued waiting indefinitely for prison officials to comply with their own regulations, he faced a substantial risk that Defendants would later assert prescription defenses against his claims. The PLRA was enacted to provide prison officials an opportunity to address grievances internally, not to permit prison officials to indefinitely delay grievance responses while simultaneously arguing that

5

inmates must continue waiting. Plaintiff should not be forced into a procedural catch-22 where filing suit results in a non-exhaustion defense and waiting for ARP responses risks prescription and indefinite delay. This predicament was created entirely by Defendants' own failure to comply with Louisiana's mandatory ARP deadlines.

***BARGHER V. WHITE* IS DISTINGUISHABLE**

9. Plaintiff acknowledges the Fifth Circuit's decision in *Bargher v. White*, 928 F.3d 439 (5th Cir. 2019), which held that expiration of a First Step response deadline under Louisiana's ARP procedure ordinarily permits an inmate to proceed to Second Step rather than immediately file suit. Plaintiff does not contend that the mere expiration of a First Step deadline automatically authorizes litigation. However, *Bargher* is distinguishable from the present case. Unlike in *Bargher*, Plaintiff did not abandon the ARP process. Rather, after prison officials finally issued First Step responses more than a year after the grievances were filed, Plaintiff continued pursuing the administrative process by filing Second Step appeals. Defendants' own evidence demonstrates that Plaintiff remained engaged in the ARP process and pursued administrative remedies once prison officials acted. More importantly, *Bargher* did not involve delays approaching those present in this case. Here, prison officials failed to issue First Step responses for approximately fourteen months, despite Louisiana regulations required completion of the entire ARP process within ninety days absent a valid extension. Plaintiff's argument is not that a missed First Step deadline automatically authorized litigation, but that Defendants' extraordinary and prolonged delays created a genuine issue of material fact as to whether the ARP process remained "available" within the meaning of 42 U.S.C. Section 1997e(a) and *Ross v. Blake*, 578 U.S. 632 (2016). Accordingly, *Bargher* does not resolve the availability issues created by Defendants' unprecedented delay in processing Plaintiff's grievances.

6

**ADDITIONAL CLAIMS RAISED IN SECOND AMENDED COMPLAINT**

10. Defendants argue that certain allegations contained within Plaintiff's Second Amended Complaint were never presented through the ARP process, however, Plaintiff maintains that ARPs were submitted concerning those incidents. The absence of those ARPs from Defendants' exhibits does not establish that no grievances were filed, particularly where the record demonstrates extraordinary delays in the processing of Plaintiff's grievances and a substantial ARP backlog. Because exhaustion is an affirmative defense, Defendants bear the burden of proving non-exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007). At a minimum, a genuine issue of material fact exists regarding whether Plaintiff submitted grievances concerning the additional allegations and whether those grievances remain pending due to the same delays that affected ARPs 424, 468, and 926.

**GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT**

11. Plaintiff maintains that the ARP process became effectively unavailable due to Defendants' failure to comply with mandatory processing deadlines. Because exhaustion presents disputed issues of fact, summary judgment remains inappropriate. Defendants' own evidence creates material factual disputes concerning whether administrative remedies remained available; whether the ARP process had become a dead end; whether prison officials were consistently unwilling to provide relief; whether Plaintiff pursued remedies to the fullest extent possible under the circumstances; and whether Defendants' extraordinary delays rendered further exhaustion impossible or impracticable. Because these issues remain disputed, Defendants are not entitled to judgment as a matter of law.

**CONCLUSION**

Defendants bear the burden of proving failure to exhaust available administrative remedies. Defendants' own evidence establishes that Plaintiff's grievances remained pending for periods exceeding one year despite a regulatory ninety-day completion period. Those delays violated Louisiana's mandatory ARP deadlines by hundreds of days and raise substantial questions concerning whether any administrative remedy remained available. At minimum, genuine issues of material fact exist regarding availability, unavailability, and exhaustion under *Ross v. Blake*. Accordingly, Defendants' *Motion for Summary Judgment* should be denied in its entirety. Nevertheless, should the Court determine that any additional allegations remain unexhausted because they are still pending within the ARP system, Plaintiff respectfully requests that any such claims be dismissed without prejudice to reassert upon completion of the ARP process and that the Court recognize that any pending ARPs should be processed in accordance with the time limits established by Louisiana Administrative Code Title 22, Part I, Section 325.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in favor of the Plaintiff and against Defendants and deny the Defendants' *Motion for Summary Judgment*.

RESPECTFULLY SUBMITTED:


　　s/Willie Stephens Jr.
**WILLIE STEPHENS, JR. (#36281)**
**THE STEPHENS LAW FIRM LLC**
11940 Bricksome Ave, Suite D
Baton Rouge, Louisiana 70816
Tel: (225) 907-6777
Fax: (225) 612-6917
Email: Willie.Stephens@StephensInjury.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the above-entitled pleading was filed electronically with the Clerk of Court by using CM/ECF system. Notice of this filing will be sent to all parties who participate in electronic filing by operation of the court's electronic filing system.

**THUS, DONE, AND SIGNED** in Baton Rouge, Louisiana, this 5th day of June, 2026

_____s/Willie Stephens Jr._____

**WILLIE STEPHENS JR**